**ISLAND CREEK COAL COMPANY and Old Republic Insurance Company, Appellants,**

v.

**Lawrence A. HICKS, Workmen's Compensation Board and Special Fund, Appellees.**

Court of Appeals of Kentucky.

June 9, 1972.

Fred G. Francis, Prestonsburg, for appellants.

M. B. Fields, Hazard, Gemma M. Harding, Dept. of Labor, Louisville, for appellees.

NEIKIRK, Judge.

Lawrence A. Hicks was employed as a night watchman by the Island Creek Coal Company. On December 30, 1967, while on duty, Hicks slipped and fell on some ice and sustained serious injuries to his left leg and hip. The Workmen's Compensation Board awarded total permanent disability benefits, to be paid by the employer. The Floyd Circuit Court affirmed the award. The Island Creek Coal Company and its insurance carrier appeal.

Hicks fell on the ice at or near a fence described as a loosely hung looping chain strung around several posts. He attracted attention to his plight by firing his pistol. At the time he was found he was complaining of pain in his hip and head. He was administered first aid by the company doctor and then sent to a hospital in Lexington. He was referred to Dr. Kearns Thompson for treatment. Dr. Thompson testified that the patient was "screaming with pain at about every breath" and complaining of pain in his hip and head. Dr. Thompson's diagnosis revealed a "severe comminuted long spiral oblique fracture of

left proximal femur." He stated that "under spinal anesthesia the fracture was openly reduced and satisfactorily internally fixed with a 4¼ inch Thornton nail and a 7-hole lateral plate, this being the longest plate available." Hicks was released from the hospital on January 12, 1968, and treated as an outpatient for about a year. During this period, according to Dr. Thompson, Hicks improved. However, he later developed a speech impairment. Dr. Thompson, in consultation with other doctors, determined that Hicks was suffering from a blockage of the blood flow in the carotid artery in his neck just below the angle of the jaw. On February 20, 1969, Dr. Thompson again operated on Hicks, and the internal fixation in the left leg and hip was removed.

When questioned about the hip injury's resulting in disability, Dr. Thompson testified as follows:

"Q. 61 At that time, sir, the time you last saw him, insofar as his injury of December 30, 1967 was concerned, tell the Board whether or not, limiting your answer to that particular injury, he was able to continue his work as a night watchman.

A. I felt that he could, sir.

Q. 62 And was his femur healed in good placement and did he have functional use of that leg?

A. He did.

Q. 63 Did he have any permanent disability that would impair him in the performance of his job as a night watchman as of March 3rd, 1969, as a result of the injury of December 30, 1967?

A. I didn't feel that he did.

Q. 64 And was he discharged insofar as you were concerned in the treatment of the hip injury?

A. Yes, sir."

Dr. Ralph J. Angelucci, a neurosurgeon in Lexington, examined Hicks on February 13, 1969, and found that Hicks was suffering from an arteriosclerotic plaque due to hardening of the arteries localized in the carotid artery. This diagnosis was confirmed by Dr. H. T. Faulconer. Dr. Faulconer operated on Hicks on March 10, 1969, to alleviate the blockage in the artery. A second operation was performed on the same day, occasioned by sudden hemorrhaging from the left side of the neck. During this operation a tracheotomy was performed "as there was compression on the trachea." During his hospital stay after these operations, Hicks became paralyzed on his right side and lost all ability to speak.

Dr. C. Dana Snyder, of Hazard, examined Hicks for evaluation purposes. Dr. Snyder had practiced his profession as a doctor since 1923, and stated that he had had much experience in treating persons sustaining industrial injuries. Dr. Snyder stated that the hip injury totally and permanently disabled Mr. Hicks. He testified as follows:

"Q. 11 Dr. Snyder, referring now to the hip and leg condition that this man showed and you found, did you arrive at a professional opinion as to whether this hip and leg condition, aside from any other trouble, was disabling?

A. In my opinion it would have been disabling had he not had anything else the matter with him.

Q. 12 Applying my question now to the hip itself—hip and leg—at any rate applying my question to the hip accident, I'll ask you what, in your professional opinion, was the—or is the extent of the man's disability to engage in his work?

A. He certainly can't engage in work even—because of the hip—even if nothing else was the matter with him.

Q. 13 And is that condition temporary or permanent?

A. It's permanent.

Q. 14 As applies to the hip?

A. That is correct."

\* \* \* \* \* \*

"Q. 19 To go back to it, it is your opinion that from the hip accident alone the man is permanently and totally disabled, is that correct?

A. That is correct."

Everyone agrees that Hicks is totally and permanently disabled. What caused the disability? Did the hip injury? Did the plaque in the carotid artery? Was it a combination of both?

The Board, in its attempt to resolve these issues, stated in its opinion and award:

"The actual injury to the hip, the age, and the type of work involved there would probably be enough for permanent total disability with an open end award, however, the very real possibility of plaque or blockage of the artery being caused by trauma to the head causes Board to disagree with some of the medical testimony herein as to possible cause of the arteriosclerotic plaque. Therefore, the total disability is based on work connected injury to the hip and to whatever contributing causes it may have later had to condition."

In its findings of fact, the Board said:

"Although hip injury is sufficient for open end award, total disability, the evidence indicates that later 100% disability has definite causal relationship to injury, therefore total disability is here granted."

The Board had medical evidence to support its finding that the injury to the hip caused total and permanent disability. However, the Board added to this finding that the plaque in the carotid artery was also "possible cause." In our opinion, this was error. None of the doctors testified that there was any connection between Mr. Hicks' accident and the plaque in the carotid artery. They testified positively to the contrary. Dr. Snyder stated that any connection between the hip injury and the carotid artery condition would be "strictly conjecture." We do not believe that there was sufficient probative evidence to support the Board in its finding that there was a causal relationship between the hip injury and the carotid artery problems suffered by Hicks.

None of the parties challenged that portion of the judgment of the circuit court dismissing the Special Fund as a party to this action.

That portion of the judgment dismissing the Special Fund as a party is affirmed. Otherwise, the judgment is reversed, with directions that this cause be remanded to the Board to find the percentage of occupational disability of claimant Hicks based on the hip injury alone.

STEINFELD, C. J., and MILLIKEN, OSBORNE, PALMORE, and REED, JJ., concur.

HILL, J., not sitting.